IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WANDA EDWARDS,                          )
                                        )
                    Plaintiff,          )
                                        )   CIVIL ACTION
v.                                      )
                                        )   No. 08-2199-CM-DWB
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
                    Defendant.          )
_____ )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act). The matter is before the court on the Commissioner's Motion for Remand (Doc. 14), made after plaintiff filed her Social Security Brief (Doc. 9)(hereinafter Pl. Br.) in accordance with D. Kan. Rule 83.7.1.

I.   Background

Plaintiff filed DIB and SSI applications in May 2003, and later amended her alleged onset date to October 25, 2002, which was her last day of work. (R. 23, 134, 121-23). After a

hearing, Administrative Law Judge (ALJ) Guy E. Taylor issued a
decision (first decision) on October 6, 2005 denying plaintiff's
applications.  (R.  23, 39-57).  Plaintiff sought, and was
granted, Appeals Council review of the ALJ's decision.  (R. 23,
59-61).  The Appeals Council found that the first decision did
"not contain an adequate evaluation of the examining source
opinion from P. Brent Koprivica, M.D.," and did "not address the
opinion from Michael Dreiling, vocational consultant."  (R. 59).
The Appeals Council remanded for the ALJ to (among other things)
"Give further consideration to the examining source opinion . . .
and nonexamining source opinion . . . and explain the weight
given to such opinion evidence."  (R. 60).

On remand, ALJ Taylor held a supplemental hearing at which
plaintiff was represented by counsel, and testimony was taken
from plaintiff, plaintiff's husband, and a vocational expert.
(R. 23, 1251-93).  On May 30, 2007, the ALJ issued the decision
now before the court(second decision or decision at issue).  (R.
23-34).  In the second decision, the ALJ found that plaintiff was
disabled December 13, 2006 (six months before she became fifty
years of age) because she was limited to sedentary work.  (R.
32).  He found that plaintiff was not disabled at any time before
December 13, 2006.  (R. 32-34).  Plaintiff disagreed, exhausted
her administrative remedies, and filed a timely complaint seeking
judicial review of the second decision.  (Doc. 1).

-2-

In her brief, plaintiff alleged three errors in the second decision:  that the ALJ's credibility finding is not supported by substantial evidence; that the ALJ improperly "dismissed" the opinions of Dr. Kopravica and Mr. Dreiling; and that the ALJ's hypothetical question did not accurately reflect plaintiff's residual functional capacity (RFC).  (Pl. Br. 22-29).  Plaintiff seeks remand for an immediate award of benefits, alleging additional fact-finding is unnecessary because the evidence establishes total disability.  Id. at 29-30.

The Commissioner apparently agreed with certain of plaintiff's allegations of error, and sought remand.  (Docs. 14, 15).  In his memorandum in support of remand, the Commissioner did not concede any particular error, but asserted that on remand the ALJ will be directed to "reevaluate the medical evidence and opinions," "reevaluate the credibility of Plaintiff and her husband," and to "obtain medical expert testimony to assist in resolving the discrepancies in the opinion evidence and the various RFC's."  (Doc. 15, p. 2).  Thus, the Commissioner tacitly agreed that each issue regarding which plaintiff alleged error must be reevaluated.

Plaintiff filed a memorandum in opposition to the Commissioner's motion for remand, and seeks immediate award of benefits.  (Doc. 16)(hereinafter Pl. Opp'n).  Plaintiff claims the ALJ's determination that plaintiff was not disabled before

-3-

December 2006 is not supported by substantial evidence in the
record as a whole, and that further proceedings are unnecessary:
because the Commissioner has not gotten it right in two decisions
over six years; because allowing the ALJ to reevaluate these
issues would be redundant; because the remaining issue is whether
plaintiff was disabled before December 13, 2006 and all of the
relevant evidence concerning that time period was in the record
before the ALJ; and because the reasons given by the Commissioner
in seeking remand are the same reasons the Appeals Council
remanded the first decision, but the ALJ did not perform the
evaluation as ordered.  (Pl. Opp'n 1, 5).

**II.  Analysis**

The court has jurisdiction pursuant to the fourth sentence
of 42 U.S.C. § 405(g) "to enter, upon the pleadings and
transcript of the record, a judgment affirming, modifying, or
reversing the decision of the Commissioner, with or without
remanding the cause for a rehearing."  However, the court may
"neither reweigh the evidence nor substitute [it's] judgment for
that of the agency."  White v. Barnhart, 287 F.3d 903, 905 (10th
Cir. 2001)(quoting Casias v. Sec'y of Health & Human Servs., 933
F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d
1168, 1172 (10th Cir. 2005).

Whether to remand a case for additional fact-finding or for
an immediate award of benefits is within the discretion of the

-4-

district court.  Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993); Taylor v. Callahan, 969 F. Supp. 664, 673 (D. Kan. 1997) (citing Dixon v. Heckler, 811 F.2d 506, 511 (10th Cir. 1987)).  In 2006, the Tenth Circuit noted two factors particularly relevant to whether to remand for an immediate award of benefits:  length of time the matter has been pending, and "whether or not 'given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits.'"  Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006)(quoting Harris v. Sec'y of Health & Human Servs., 821 F.2d 541, 545 (10th Cir. 1997); and citing Sisco v. Dep't of Health & Human Servs., 10 F.3d 739, 746 (10th Cir. 1993)).

The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits.  Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986).  However, the Commissioner is not entitled to adjudicate a case ad infinitum until he correctly applies the proper legal standard and gathers evidence to support his conclusion.  Sisco, 10 F.3d at 746.

As the court in Salazar suggested, the length of time the Commissioner has been considering an application for DIB is a

weighty factor in the court's decision.  <u>Salazar</u>, 468 F.3d at
626.  Plaintiff's claim has been pending for six years.  (R. 121-
23).  This case was once remanded by the Appeals Council for
consideration of Dr. Kopravica's and Mr. Dreiling's opinions
regarding plaintiff's condition.  Moreover, on remand plaintiff
was found disabled beginning December 13, 2006 because on that
date she was "considered age 50, an 'individual approaching
advanced age.'"  (R. 32).

     At that time, the record was sufficiently developed to
determine plaintiff's medical condition as of December 13, 2006,
and there is no reason to believe further development is
necessary as to the time period before that date.  Neither the
Commissioner nor plaintiff allege that the evidence is
incomplete, that additional evidence exists regarding the
relevant time period which is not included in the record, or that
additional evidence is necessary to reach a proper decision.  The
Commissioner merely argues that he needs another shot at it, to
hopefully get it right.  Yet, he presents no explanation why he
would get it right with another remand when he was unable to get
it right after the Appeals Council remand.  He does not even
suggest that he will assign the case to another ALJ on remand.

     Because both parties agree error was made in the second
decision, the controlling issue in determining whether immediate
award of benefits is justified is whether substantial and

uncontradicted evidence on the record as a whole indicates that
the claimant is disabled and entitled to benefits.  Gilliland,
786 F.2d at 184, 185.  Stated another way, the question is
whether "given the available evidence, remand for additional
fact-finding would serve [any] useful purpose but would merely
delay the receipt of benefits."  Salazar, 468 F.3d at 626.  As
plaintiff and the Commissioner seem to agree, the ALJ failed to
properly weigh the opinions of Dr. Kopravica and Mr. Dreiling
despite being instructed to do so, and did not properly explain
his findings regarding the credibility of plaintiff's and
plaintiff's husband's allegations of symptoms.

    Plaintiff argues that the evidence establishes that in
accordance with 42 U.S.C. § 423(d) she has a physical or mental
impairment which prevents her from engaging in any substantial
gainful activity since she ceased working on October 25, 2002,
and since then she cannot, considering her age, education, and
work experience, engage in any other substantial gainful work
existing in the national economy.  The Commissioner admits that
the ALJ did not properly evaluate the question of disability, but
argues that remand for additional fact-finding is necessary.  He
concedes immediate award of benefits is proper if the record
establishes that plaintiff is entitled to benefits.  (Doc. 15,
p.3)("When the ALJ errs, the remedy is not per se the award of
disability benefits.  The record must show that the claimant is

-7-

entitled to benefits."). But he does not point to record
evidence tending to show that plaintiff is not entitled to
benefits. The court agrees with plaintiff, and finds that
substantial and uncontradicted evidence on the record as a whole
indicates plaintiff is disabled and entitled to benefits, and
that remand would serve no useful purpose but would merely delay
the receipt of benefits.

After remand from the Appeals Council, plaintiff was
referred to Dr. Fortune for a consultative examination. (R.
1196-1203). As the ALJ noted, Dr. Fortune completed a Medical
Source Statement of Ability to do Work-Related Activities
(Physical), in which he opined that plaintiff could perform a
limited range of medium work, restricted to lifting only twenty-
five pounds occasionally and twenty pounds frequently, limited to
reaching only occasionally due to pain and reduced range of
motion in the right shoulder, and limited from exposure to dust,
vibration, fumes, odors, chemicals, and gases. (R. 31)(citing
Ex. 29F, R. 1200-03). Dr. Fortune found no other restrictions in
plaintiff's capabilities. Id. The ALJ rejected Dr. Fortune's
examining source opinion because he found "the claimant is more
limited than Dr. Fortune determined her to be." (R. 31).

The ALJ stated that "no treating or examining physician has
opined the claimant is totally disabled." (R. 31). He discussed
the opinions of Dr. Kopravica and Mr. Dreiling:

-8-

In October 2003, P. Brent Koprivica, M.D., performed an independent medical evaluation in which he opined the claimant was a poor candidate for further attempts to repair her right shoulder girdle and that she had chronic impingement of the left shoulder and should avoid above shoulder activities.  However, after review of a vocational analysis of job tasks, performed by vocational consultant Michael J. Dreiling (Exhibit 10E)[(R. 199-219)], he wrote an addendum to this report in December 2003 in which he opined the claimant was totally and permanently disabled because the vocational consultant found there were no jobs in the labor market the claimant could perform (Exhibit 18F)[(R. 1107-30)].

At first glance, based on these two opinions, it might appear that the claimant is totally disabled, however, the undersigned is charged with making a finding on whether the claimant is disabled based on rules and attending regulations set forth in the Social Security Act.  The undersigned acknowledges that such opinions are part of the medical record and to be considered as an "other source" (20 CFR 404.1513,416.913, SSR 96-8p), but it is apparent such opinions were written for purposes other than finding the claimant disabled under the Act.  Such other purpose would include her worker's compensation settlement.  Mr. Dreiling based his opinion on the claimant's "vocational profile" including the fact that all of her past work involved significant use of her upper extremities.  Moreover, he indicated "it does not appear that she had acquired any significant transferable job skills to work of a lighter nature ..."  His conclusion, therefore, was based on her vocational situation that she was permanently and totally disabled (Exhibit 10E)[(R. 199-219)].  When evaluating the criteria for disability under the act, the consideration goes beyond the claimant's vocational profile and hinges upon whether she can perform any other work in the national economy. As indicated below, the vocational expert who testified at the hearing found such work existed irrespective of transferable work skills.

Dr. Koprivica based his opinion on the reasoning of Mr. Dreiling's report.  As such, it is accorded little weight, Dr. Koprivica is not a treating source, but he did examine the claimant for the purposes of her worker's compensation claim.  Based on his initial assessment of the claimant, she was able to perform

work-related activity so long as she avoided over-the-shoulder work. Essentially, his opinion only changed after reading Mr. Dreiling's vocational report. Again, this opinion is accorded little weight and is not consistent with other medical evidence of record.

Overall, there is no showing that this claimant is totally disabled. The medical evidence supports a finding that in light of her multiple impairments, she is able to perform work of sedentary exertion. Thus, she is not as limited as she alleged.

(R. 31-32).

The ALJ's discussion reveals a misunderstanding of Dr. Kopravica's reports. Dr. Kopravica performed an independent medical evaluation of plaintiff, and indicated that he spent four and one-half hours reviewing the voluminous medical record and examining plaintiff, in addition to the time spent preparing the twenty-two page letter report on October 17, 2003, and the two-page supplemental report on December 12, 2003. (R. 1129). Dr. Kopravica presented his qualifications, noting that he is a medical doctor licensed in Kansas and Missouri, and board-certified in occupational medicine. (R. 1109-10). He noted that he also has a master's degree in public health in occupational and environmental medicine. (R. 1109). He noted that he had reviewed "voluminous medical records," including records from Dr. Parmar, Dr. Clymer, Dr. Carabetta, Dr. Storm, Dr. Forester, and Dr. Frevert, and records from Providence Medical Center, Health Midwest, Business and Industry Health Group, Baptist Medical Center, and Lee's Summit Hospital. (R. 1110).

Dr. Kopravica provided an extensive summary of plaintiff's history, including separate sections for Educational and Vocational History, History of Present Injury/Illness, Subjective Complaints, Past Medical History, Review of Systems, Personal History, Family History, and Medications/Allergies. (R. 1110-18). He gave a summary of the physical examination performed, including results of grip strength measurement, pinch strength measurement, and range of motion evaluations. (R. 1118-20). He noted the diagnostic studies which he had reviewed. (R. 1120).

Dr. Kopravica then set out his Conclusions/Recommendations in an extensive section of the report. (R. 1121-30). He set out his evaluation pursuant to the American Medical Association, "Guides to the Evaluation of Permanent Impairment," Fourth Edition, and concluded that plaintiff has an "overall forty-nine (49) percent whole person impairment. (R. 1122-27).

Dr. Kopravica opined that plaintiff has severe work restrictions consisting of: no above-shoulder activities, including unweighted overhead reaching; no climbing; no forceful pushing or pulling at shoulder girdle level; no exposure of the upper extremities to vibration; no repetitive pinching, grasping, wrist flexion/extension, or elbow flexion/extension; upper extremity use limited to waist high activities, and only done occasionally; and below shoulder girdle activity limited to

sedentary physical demand and allowing only occasionally lifting
or carrying ten pounds.  (R. 1127-28).

     After assigning these restrictions, Dr. Kopravica noted he
did not know whether they would preclude work.  He stated:  "When
one looks at the severity of the restrictions that I have placed,
there is an issue regarding Ms. Ross-Edwards' ability to access
the open labor market.  However, there may be potential jobs in
the open labor market for which Ms. Ross-Edwards would qualify.
These issues are vocational issues."  (R. 1128).  He then
recommended a "formal vocational evaluation," of job tasks
"performed in the fifteen years of substantial gainful
employment," and noted,

          I would be more than happy to review that task list and
          apply the restrictions that I have outlined to
          determine the percentage loss of task ability based on
          the work injury claim date of October 25, 1999.  This
          will be substantial.  The vocational expert can also
          address the issue of permanent and total disability
          based on the restrictions that have been placed.

Id.

     Dr. Kopravica's report makes clear that he placed severe
work restrictions on plaintiff, but realized he did not have the
vocational expertise to determine what effect those restrictions
would have on plaintiff's actual ability to work at a job.  The
ALJ's finding that Dr. Kopravica based his opinion on the
reasoning of Mr. Dreiling's report is not supported by the
evidence and is erroneous.  After Dr. Kopravica's report was

done, plaintiff went to see Mr. Dreiling for a "vocational assessment, in order to evaluate her ability and capacity to return to work in the labor market." (R. 200). Mr. Dreiling provided an extensive report detailing his evaluation. (R. 200-19). He noted the medical reports identifying functional limitations which he had reviewed in forming his opinion, including reports from Dr. Kopravica, Dr. Frevert, Dr. Parmar, Dr. Clymer, and Dr. Storm; and noted the limitations presented in each report. (R. 200-01). He provided a summary of plaintiff's work background including an extensive summary of the work tasks plaintiff performed. (R. 202-05). He summarized the vocational testing performed, and provided conclusions based upon his assessment. (R. 206-10). Based upon vocational testing, Mr. Dreiling concluded that plaintiff "is functioning at a level below her stated completion of a GED." (R. 207).

Mr. Dreiling concluded that plaintiff is unable to work eight hours a day, forty hours a week, and is unable to compete in the open labor market. (R. 208). He noted that plaintiff was 46 years old at the evaluation; reported completing a GED but has no further academic or vocational training skills; lacks typing, computer, or office skills; and has significant medical restrictions. (R. 209). He stated the "medical restrictions advised by Dr. Kopravica will significantly limit this individual from a vocational perspective and result in her inability to

-13-

essentially and realistically become employable in the current labor market." Id. He noted that "a physician may be in a position to review the work tasks that have been identified in this vocational report, in order to determine any potential loss that this individual has sustained as a result of medical problems, in terms of performing work tasks for the 15 years prior to her work injury." (R. 210).

Thereafter, Dr. Kopravica evaluated the work tasks identified by Mr. Dreiling. (R. 1107-08). He found that plaintiff has the physical capacity to perform two of eight tasks identified, and concluded that plaintiff has "a seventy-five (75) percent loss of task ability." (R. 1107). He then noted:

> Of greater consideration in Ms. Ross-Edwards' case is the fact that practically and realistically, Ms. Ross-Edwards is permanently and totally disabled. Mr. Dreiling has indicated vocationally that she cannot access the open labor market within the restrictions necessary based upon her physical impairments.

(R. 1108).

First, and contrary to the ALJ's finding, Dr. Kopravica's opinion was not based upon the reasoning of Mr. Dreiling's report. The doctor examined plaintiff and evaluated the medical records, and determined specific severe limitations and restrictions imposed by plaintiff's condition. He noted that the limitations and restrictions were very limiting, noted they might potentially allow for some sedentary jobs in the economy, and recognized that was a vocational determination. Mr. Dreiling

-14-

analyzed the limitations and restrictions imposed by all of the doctors including Dr. Kopravica, analyzed and identified the job tasks plaintiff had performed within the last fifteen years, and determined, based upon those restrictions and plaintiff's "vocational profile" (including age, education, and work experience), that plaintiff is essentially and realistically unemployable.  Dr. Kopravica's opinion did not change after reading Mr. Dreiling's report as the ALJ found.  Rather, after reading the report Dr. Kopravica merely analyzed the specific job tasks identified by Mr. Dreiling in light of the restrictions and limitations previously found and concluded that although plaintiff potentially had the physical capacity to perform twenty-five percent of the tasks, as a practical matter she was unable to work, and permanently and totally disabled.

Second, the ALJ erred in finding that no examining physician had opined that plaintiff is totally disabled.  As noted above, Dr. Kaprovica clearly opined that plaintiff is totally disabled.  Moreover, the record is clear that Dr. Kopravica was an examining physician because he examined plaintiff for the purpose of an independent medical evaluation.  (R. 1109, 1118-20).  Finally, the ALJ rejected the opinion of Dr. Fortune, the only medical opinion by a treating or examining physician which is clearly

contrary to that of Dr. Kopravica.[1]  Thus, the medical opinion
evidence is uncontradicted that plaintiff is totally disabled
beginning Oct. 25, 2002.

     Similarly, the ALJ's reasons for discounting Mr. Dreiling's
report are not supported by substantial evidence in the record.
The ALJ discounted Mr. Dreiling's report because it was produced
for purposes of worker's compensation proceedings, and because it
was based upon plaintiff's vocational situation.  He stated:

> When evaluating the criteria for disability under the
> act, the consideration goes beyond the claimant's
> vocational profile and hinges upon whether she can
> perform any other work in the national economy.  As
> indicated below, the vocational expert who testified at
> the hearing found such work existed irrespective of
> transferable work skills.

(R. 31).

     Although plaintiff does not make the argument, the court
finds that the ALJ's rationale stated above is error as a matter
of law.  The regulations require that at step five of the
sequential evaluation process, the Commissioner will determine
whether a claimant can make an adjustment to other work by
considering the RFC assessment (made between step three and step
four of the process) "together with your vocational factors (your

---

[1]The court notes the record contains two physical RFC
assessment forms completed by state agency physicians which
indicate that plaintiff is able to work.  (R. 1096-1106(August
27, 2003), 1183-90(March 23, 2006)).  However, the ALJ made no
mention of these opinions in the decision, and the court finds
them insufficient to overcome the weight of the medical evidence
and the analysis of Dr. Kopravica.

age, education, and work experience)."  20 C.F.R. §§ 404.1520(g),
416.920(g); see also 42 U.S.C. § 423(d)(2)(A)(claimant is
disabled if he "cannot, considering his age, education, and work
experience, engage in any other kind of substantial gainful
work")(emphasis added).  The Act and the regulations require that
the evaluation at step five of the process include the vocational
factors of age, education, and work experience.  Mr. Drieling's
report leaves no doubt that his opinion was based upon the
limitations and restrictions imposed by medical sources as a
result of plaintiff's impairments, and upon the vocational
factors of age, education, and work experience.  (R. 200-19).
That Mr. Dreiling spoke of these factors as plaintiff's
"vocational profile" rather than "vocational factors" is of no
import whatsoever.  The ALJ's attempt to discount Mr. Dreiling's
report leaves the court wondering whether the ALJ actually
considered plaintiff's age, education, and work experience in
determining whether plaintiff is able to perform other work in
the economy.

        The ALJ justified his findings with regard to Mr. Dreiling's
report because the vocational expert who testified at the hearing
stated that other work of which plaintiff is capable "existed
irrespective of transferable work skills." (R. 31).  However,
the vocational expert testimony was based upon a hypothetical
situation significantly different than the restrictions and

limitations opined by Dr. Kaprovica.  As noted above, Dr.
Kopravica found that with regard to both of plaintiff's upper
extremities, she is restricted to no above-shoulder activities,
including unweighted overhead reaching; no forceful pushing or
pulling at shoulder girdle level; no exposure of the upper
extremities to vibration; no repetitive pinching, grasping, wrist
flexion/extension, or elbow flexion/extension; upper extremity
use limited to waist high activities, and only done occasionally;
and below shoulder girdle activity limited to sedentary physical
demand and allowing only occasionally lifting or carrying ten
pounds.  The hypothetical question presented to the vocational
expert only limited plaintiff to lifting and carrying twenty
pounds occasionally and ten pounds frequently; a limited ability
to push and pull with her <u>right</u> upper extremity; only occasional
ability to reach and handle with her <u>right</u> upper extremity; and
inability to use a ladder.  (R. 1288).  Thus, the vocational
expert's testimony is unrelated to the uncontradicted medical
opinion of Dr. Kopravica, and is unworthy of reliance by the ALJ.

However, the record contains the vocational opinion of Mr.
Dreiling which is based upon the uncontradicted medical evidence
of record.  Mr. Dreiling opined that based upon the medical
opinions and the vocational factors present in this case,
plaintiff is unable to essentially and realistically become
employable.

-18-

In summary, the court finds the administrative record has been fully developed and substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits.  Therefore, given the available evidence, remand for additional fact-finding would serve no useful purpose but would merely delay the receipt of benefits.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's motion (Doc. 14) be GRANTED IN PART AND DENIED IN PART, that the final decision be REVERSED, and that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case to the Commissioner to find plaintiff disabled beginning October 25, 2002, and to award benefits accordingly.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  Morales-Fernandez v. INS, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 26th day of May 2009, at Wichita, Kansas.

s/Donald W. Bostwick
**DONALD W. BOSTWICK**
**United States Magistrate Judge**

-19-